IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT K.,[1]

                Plaintiff,

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

Case No. 6:20-cv-00847-MK

**OPINION AND ORDER**

**KASUBHAI, Magistrate Judge.**

    Robert K. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Insurance ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. §

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. Id. Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" Bray, 554 F.3d at 1222 (quoting Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Born in 1989, Plaintiff was a "younger person" on his alleged onset date of November 29, 2016. (Tr. 196, 199.) Plaintiff has a GED, completed some college, and has past work experience as a prep cook. (Tr. 43.) Plaintiff filed his applications for DIB and SSI on July 14, 2017, alleging disability due to severe mental impairments. (Tr. 196.)

PAGE 2 – OPINION AND ORDER

After the Commissioner denied Plaintiff's applications initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge (ALJ) and appeared and testified at a hearing held on July 24, 2017. (Tr. 223.) After the hearing, the ALJ issued a written decision dated March 15, 2019 denying Plaintiff's applications. (Tr. 14-33.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5.) Plaintiff now seeks judicial review of that decision.

## II.   THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. Id. at 724-25. The claimant bears the burden of proof for the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. Id.; Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." Tackett, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. Bustamante, 262 F.3d at 954 (citations omitted).

### III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 14-33.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 29, 2016, his alleged onset date. (Tr. 20.) At step two, the ALJ determined that Plaintiff suffered from the severe impairments of schizoaffective disorder, depressive type; depression; anxiety; post-traumatic stress disorder (PTSD); and polysubstance abuse (primarily methamphetamine and marijuana). (Tr. 20.)

At step three, the ALJ concluded that Plaintiff's impairments inclusive of polysubstance use disorder meet Listing 12.03 of C.F.R. Part 404, Subpt. P, Appx. 1. (Tr. 21.) The ALJ also determined that if Plaintiff stopped the substance use, his remaining impairments would cause more than a minimal impact on his ability to perform basic work activities, but that Plaintiff would not have an impairment or combination of impairments that meets or equals a Listing. (Tr. 23.)

The ALJ then determined that if Plaintiff stopped his substance use, he would have the residual functional capacity ("RFC") to perform a full range of work following limitations: he can understand, remember, and carry out only short, simple instructions; he can make only simple work-related judgments and decisions; he can have no more than occasional contact with the public, coworkers, and supervisors; and he can have no more than occasional changes in a routine work setting. (Tr. 25.)

At step four, the ALJ found that Plaintiff had no past relevant work experience. (Tr. 31.) At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (Tr. 32.) The ALJ therefore concluded that Plaintiff was not disabled. (Tr. 32.)

PAGE 4 – OPINION AND ORDER

Plaintiff argues that the ALJ erred by (1) improperly evaluating the medical opinion evidence; (2) improperly rejecting Plaintiff's subjective symptom testimony; (3) making improper findings at Step Two; and (4) making improper findings at Step Three.

## DISCUSSION

I.   **MEDICAL OPINION EVIDENCE**

Plaintiff first argues that the ALJ improperly rejected the opinions of treating mental health professionals Susan Nierman, MA, LPC, Renee Pennington, PMNHP, Sarah Haefele, MSW, LCSW, and Marc Williams, MD. "There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" Id. (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Id. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate

language that fails to offer a substantive basis for his conclusion." Id. at 1012-13 (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996)).

### 1. Susan Nierman, MA, LPC, and Renee Pennington, PMNHP

In February 2018, Ms. Nierman and Nurse Pennington opined that Plaintiff would be unable to maintain concentration for thirty percent of the workday; work in coordination with others; complete an ordinary workweek without symptom interruption; perform at a consistent pace; interact with the public; get along with co-workers; maintain socially appropriate behavior; or use public transportation. (Tr. 430-32.) They also opined that Plaintiff would likely be absent from work five days or more per month and that he would be off-task for more than thirty percent of the workday. (Tr. 433.)

The ALJ first noted that Ms. Nierman and Nurse Pennington's findings were inconsistent with evidence that Plaintiff experienced significant symptom improvement over time. (Tr. 30.) The ALJ may discount a medical opinion when it is inconsistent with the medical record. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, Plaintiff's treatment records show marked improvement after just three months clean from methamphetamines. (Tr. 314.) Further, Plaintiff presented as calmer and less distressed while using psychotropic medications. (Id.) Plaintiff continued to show improvement throughout 2017, with less anxiety, decreased nightmares, and improved mood dysregulation. (Tr. 399.) Plaintiff repeatedly denied symptoms of psychosis. (Tr. 417, 683, 701, 708, 715, 731.) Although Plaintiff experienced some remission of symptoms while using a corticosteroid, he reported marked improvement on a new antipsychotic medication in April 2018. (Tr. 647, 651.) Because their opinions were inconsistent with these findings of improvement, the ALJ's rejection of Ms. Nierman and Nurse Pennington's opinions was supported by substantial evidence. Ghanim, 763 F.3d at 1161.

The ALJ also found that the opinions of Ms. Nierman and Nurse Pennington were not supported by objective evidence. (Tr. 30.) The ALJ need not accept a physician's opinion that is inadequately supported by clinical findings. Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012). Here, no opinion was offered on the extent to which Plaintiff's substance abuse affected his mental symptoms and functioning. (Tr. 430-33.) Further, other evidence of record indicates that marijuana use exacerbated Plaintiff's depression and anxiety, yet he continued to use it despite the admonishments of his treatment providers. (Tr. 326, 392.) On this record, the ALJ reasonably rejected the extreme limitations assessed by Ms. Nierman and Nurse Pennington and provided legally sufficient reasons for doing so. Chaudhury, 688 F.3d at 671.

**2. Sarah Haefele, MSW, LCSW, and Marc Williams, MD**

In January 2019, Dr. Williams and Ms. Haefele opined that Plaintiff would have debilitating limitations in almost every area of mental functioning related to understanding and memory, concentration and persistence, social interaction, and adaptation. (Tr. 546-48, 552-55.) They also opined that Plaintiff would be absent from work for five or more days per month, and that he would be off-task for more than thirty percent of the workday due to severe schizophrenia. (Tr. 549, 555.) Ms. Haefele also opined in a letter that Plaintiff had been "clean and sober" for two years and that his condition nevertheless remained "severely disabling." (Tr. 550-51.)

The ALJ rejected these opinions, finding first that they were inconsistent with the record. The ALJ may discount a medical opinion when it is inconsistent with the medical record. Tommasetti, 533 F.3d at 1041. Here, by contrast with Dr. Williams' and Ms. Haefele's findings that Plaintiff was severely limited in understanding and memory and would have a high degree of impairment using public transportation, Plaintiff exhibited average intelligence and adequate memory in mental status exams and was able to use public transportation and follow simple

PAGE 7 – OPINION AND ORDER

instructions. Further, as discussed above, the record shows significant improvement in Plaintiff's symptoms after he stopped using methamphetamines and bath salts. Because their opinions were inconsistent with these findings, the ALJ's rejection of Dr. Williams' and Ms. Haefele's opinions was supported by substantial evidence. Ghanim, 763 F.3d at 1161.

The ALJ also found that the opinions of Dr. Williams and Ms. Haefele were not adequately supported by the record. The ALJ need not accept a physician's opinion that is inadequately supported by clinical findings. Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012). Here, Dr. Williams did not mention the role of substance abuse in Plaintiff's mental functioning, even though the record shows that substance abuse factored significantly in Plaintiff's mental symptoms. Ms. Haefele's statement that Plaintiff was "clean and sober" also failed to acknowledge that Plaintiff's marijuana use continued throughout the relevant period, despite admonishments to quit because it exacerbated his anxiety and depression. On this record, the ALJ provided clear and convincing reasons supported by substantial evidence for rejecting the opinions of Dr. Williams and Ms. Haefele. The ALJ's evaluation of the medical evidence is therefore affirmed.

## II.   SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff next argues that the ALJ improperly rejected his subjective symptom testimony. The ALJ is required to provide specific, clear and convincing reasons for rejecting a claimant's testimony. Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014). At the administrative hearing, Plaintiff testified that he was unable to work primarily due to a combination of mental impairments.

The ALJ rejected Plaintiff's testimony to the extent that it conflicted with the RFC. (Tr. 24-25.) The ALJ first noted that Plaintiff's testimony of debilitating mental symptoms that did not improve after he stopped using methamphetamine conflicted with evidence that Plaintiff's conditions improved with conservative treatment. The ALJ may discount a claimant's statements

if medical opinion evidence contradicts the claimant's subjective testimony. Carmickle v. Comm'r, 533 F.3d 1155, 1161 (9th Cir. 2008). Evidence of conservative treatment is "sufficient to discount a claimant's testimony regarding the severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). Further, evidence that a claimant's symptoms improved with treatment provides a clear and convincing reason to reject claims of lack of improvement. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Impairments that can be controlled effectively with treatment are not disabling. Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006).

Here, Plaintiff reported debilitating mental impairments, including delusions and recurrent psychotic symptoms. (Tr. 26-28.) Nevertheless, Plaintiff's treatment records show "significant improvement" after just three months clean from methamphetamines. (Tr. 314.) Further, Plaintiff presented as calmer and less distressed while using psychotropic medications. (Id.) Plaintiff continued to show improvement throughout 2017, with less anxiety, decreased nightmares, and improved mood dysregulation. (Tr. 399.) Plaintiff also repeatedly denied symptoms of psychosis. (Tr. 417, 683, 701, 708, 715, 731.) Although Plaintiff experienced some remission of symptoms while using a corticosteroid, he reported marked improvement on a new antipsychotic medication in April 2018. (Tr. 647, 651.) On this record, the ALJ reasonably concluded that Plaintiff was less impaired than alleged in his testimony because his symptoms gradually improved with treatment and cessation of substance abuse. Warre, 439 F.3d at 1006.

The ALJ next found that Plaintiff's testimony regarding disabling mental limitations was contradicted by his activities during the relevant period. (Tr. 26-27.) An ALJ may discount a claimant's testimony when her activities "are incompatible with the severity of the symptoms alleged." Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014). Here, while Plaintiff stated in his application for benefits that he had severe panic attacks whenever he left the house, Plaintiff's

PAGE 9 – OPINION AND ORDER

treatment provider Ms. Nierman noted that Plaintiff "felt the best overall" when he engaged in outdoor activities." (Tr. 737.) The record shows that Plaintiff left his house on a regular basis to enjoy activities such as fishing, biking, attending church, and walking his dog. (Tr. 314.) This inconsistency provides additional weight to the ALJ's assessment of Plaintiff's testimony. Further, Plaintiff was able to work at a restaurant during the relevant period and reported to his therapist that he was interested in employment. (Tr. 647.) On this record, it was reasonable for the ALJ to infer from Plaintiff's activities that he was less limited than alleged in his testimony.

The ALJ next noted that the objective medical evidence did not support Plaintiff's allegations of disabling mental impairments. The ALJ may consider objective medical evidence when assessing a claimant's testimony. 20 C.F.R. 404.1529(c)(2), 416.929(c)(2). Here, Plaintiff's clinical and psychiatric evaluations revealed largely unremarkable findings. (Tr. 314.) While Plaintiff presents an alternative interpretation of the evidence, the Court defers to the ALJ's reasonable reading of the record. Bray, 554 F.3d at 1222. The ALJ's evaluation of Plaintiff's testimony was free of harmful error.

### III.   STEP TWO FINDINGS

Plaintiff next argues that the ALJ erroneously determined that he had the severe impairment of polysubstance abuse at step two of the sequential analysis. Specifically, Plaintiff argues that the ALJ's step two findings are erroneous because his methamphetamine use is in remission, and because his use of marijuana as a sleep aid does not constitute substance abuse. To count as severe, an impairment must "significantly limit[ a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. 404.1520(c). An impairment is not severe "when [the] medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no

more than a minimal effect on an individual's ability to work." SSR 85-28, available at 1985 WL 56856, at *3.

Here, the ALJ noted that Plaintiff presented to the emergency room for medical clearance before going to jail in November 2016. (Tr. 21, 294.) The attending physician opined that Plaintiff's presentation was consistent with acute methamphetamine use, and a drug screen was positive for amphetamines, methamphetamines, and marijuana. The attending physician listed differential diagnoses of methamphetamine abuse, drug ingestion, alcohol intoxication, and dehydration. (Tr. 295.)

Treatment records dated June 2017 contain a "History of [Plaintiff's] Present Illness," which include symptoms of decompensation and delusions. (Tr. 323.) The records also indicate that Plaintiff's mother reported Plaintiff's delusional symptoms began before Plaintiff was released from jail, and after he began using "large amounts of substances," including methamphetamine and "bath salt." (Id.) Plaintiff also reported that at times when he believed he was taking methamphetamines, he was actually ingesting bath salt. (Tr. 411.) Plaintiff's treating physician assessed stimulant use disorder in early remission, noting that Plaintiff had a "significant history of methamphetamine and bath salt use." (Tr. 392.) Plaintiff acknowledged that his substance use interfered significantly with his functioning, resulting in job loss, arrest, and interpersonal problems. (Tr. 392.) Treatment records also confirm Plaintiff's continued use of marijuana despite providers' admonishments that it was worsening his depression and anxiety. (See Tr. 651 (note from treating psychiatrist Marc Williams, M.D., that Plaintiff's use of marijuana "may perpetuate" his symptoms); 663, 675, 693, 700.)

Plaintiff repeatedly argues that the treatment notes cited by the Commissioner characterize Plaintiff's "pre-2017 history," contending that all of these records refer to Plaintiff's "present

PAGE 11 – OPINION AND ORDER

illness prior to 2017." The Court rejects this argument. The treatment notes cited clearly indicate that they describe a history of Plaintiff's "Present Illness," which reasonably indicates ongoing symptoms as of June 2017. (Tr. 323, 411.)

On this record, the ALJ reasonably concluded that Plaintiff's polysubstance abuse constituted a severe impairment that affected Plaintiff's social, cognitive, and adaptive functioning to the point where Plaintiff met the listing for schizophrenia spectrum disorder and other psychotic disorders. (Tr. 22-23.) While Plaintiff argues that his substance use was in remission by his alleged onset date of November 2016, the ALJ reasonably interpreted the record to find that Plaintiff abused bath salts and other substances as recently as 2017. (Tr. 323, 332, 411.) Plaintiff also argues that the finding that his polysubstance abuse was "severe" was improper because it did not meet the 12-month durational requirement; however, any error resulting from this finding was harmless because the ALJ included all of Plaintiff's substantiated limitations in the RFC. See Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) (an ALJ commits harmless error when it is inconsequential to the ultimate non-disability determination).

## IV.   STEP THREE FINDINGS

Plaintiff argues, finally, that the ALJ erred by failing to find his combined impairments, minus polysubstance abuse disorder, met or equaled a listing at step three. At step three of the sequential evaluation, a claimant can establish disability if she proves that her impairments meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Bowen, 482 U.S. at 140-41. Listed impairments contain "strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Cir. 2013).

PAGE 12 – OPINION AND ORDER

Plaintiff argues that the ALJ should have found his combined impairments met or equaled Listing 12.03 for schizophrenia spectrum disorders. To satisfy the requirements of Listing 12.03, a claimant must provide medical documentation of one or more of the following: (1) Delusions or hallucinations; (2) Disorganized thinking (speech); or (3) Grossly disorganized behavior or catatonia; *and* extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (1) Understand, remember, or apply information; (2) Interact with others; (3) Concentrate, persist, or maintain pace; and (4) Adapt or manage oneself. A "marked limitation" means functioning in this area "independently, appropriately, effectively, and on a sustained basis is seriously limited." Id. To show an extreme limitation, a claimant must show she is unable to function independently, appropriately, effectively, and on a sustained basis." Id.

If the claimant cannot meet these criteria, he may nevertheless meet 12.03 if he meets the following "Paragraph C" criteria:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; *and*
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(E).

Here, the ALJ noted that Plaintiff's functioning improved significantly after he stopped using methamphetamines. (Tr. 23-25.) Plaintiff was able to engage in a wide array of activities, including fishing, bike riding, walking his dog, and spending time with neighbors and family. (Tr. 314, 409-10, 689, 706, 719, 730-31.) Plaintiff also presented as calm and cooperative at a number of treatment sessions, and occasionally denied symptoms of psychosis. (Tr. 398, 683, 701.) Plaintiff's mental status exams consistently revealed adequate memory and/or attention, and

PAGE 13 – OPINION AND ORDER

average intelligence, and he was able to engage in some work activities. (Tr. 311, 341, 347, 391, 399, 416, 593, 642.) Further, as discussed above, the ALJ properly rejected the medical opinions of record that indicated his symptoms met or equaled the criteria for Listing 12.03. While Plaintiff presents an alternative interpretation of the record, the Court must affirm the ALJ's reasonable findings when based upon substantial evidence. Bray, 554 F.3d at 1222. On this record, the ALJ's step three findings were free of harmful error and are affirmed.

## CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

DATED this 9th day of September 2021.

s/ Mustafa T. Kasubhai  
MUSTAFA T. KASUBHAI (He / Him)  
United States Magistrate Judge

PAGE 14 – OPINION AND ORDER